## Case No. 5,186.

### The GALAXY.

[Blatchf. & H. 270.] [1]

District Court, S. D. New York. May 13, 1831.

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

BETTS, District Judge. The claimants do not deny that this is a proper case for the allowance of salvage. They only insist upon circumstances which they suppose should diminish the allowance. These are, that the Union was not diverted from her course or delayed; that no lives were saved from the wreck; that no additional hazard of life or health was imposed on the salvors, by their efforts to save the vessel; and that she was towed easily into this port in about four days.

Another particular is brought to the notice of the court, which, if proved, would deprive the salvors of all claim to salvage, namely, that there has been an embezzlement by them of some part of the cargo of the Galaxy. It appears, by the marshal's account of sales, that twenty-three barrels of flour and one barrel of whiskey less than the bills of lading given by the master of the Galaxy expressed, were found on board. So, also, some hams and dried beef were missing. The master of the Galaxy proves, that the Invincible, which took him and his crew off the wreck, took away thirteen barrels of flour, and, he believes, some hams and dried beef, for fear her provisions would be short for the whole company then on board. Not only does each individual of the crew of the Union deny that anything was taken by that vessel out of the wreck, but their testimony is very fully supported by that of a passenger on board the Union, who has no interest in this suit. If any embezzlement occurred after the wreck arrived at this port, it could be proved by the pilot, and by other officers who were constantly on board until her arrest in this case; but they have none of them been examined by the claimants. The wreck had been abandoned two days or more, before she was fallen in with by the Union. In that interval, as she was directly in the track of coasting vessels, she may have been boarded by other vessels, or the Invincible may have removed a greater quantity of supplies than the master of the Galaxy was apprised of or recollects, or the bills of lading may not have stated the true quantity on board. The testimony does not, in my judgment, fix the embezzlement upon the salvors, and they cannot be denied compensation for that cause.

The services of the libellants were eminently meritorious and important to the wreck. She had been wholly abandoned, and was left in a condition which must very soon have resulted in her total loss. She was navigated for three or four days, with great fatigue to the crew of the Union, and with some considerable degree of exposure both to them and their vessel. For, by dividing the crew, each vessel was so short manned as to require every individual to be constantly on duty, and an occurrence of boisterous weather would, probably, have been fatal to both vessels. The labor and hazard incurred in saving this property were, therefore, such as courts of admiralty always favor. The rate of compensation rests in the discretion of the court, and is made to conform to the particular equities of the case. It accordingly varies, in a case of derelict, from a very trifling per centage upon the property saved, to two-thirds of its value. Judge Story collects a numerous list of cases on the subject, and concludes that, in cases of derelict, courts of admiralty adhere to a moiety as the favorite amount, and require some peculiar circumstances to vary it. Abb. Shipp. (Story's Ed. 1829) 397, note 1. I perceive nothing in this case to vary the allowance from that standard. The reward it affords is sufficient compensation for the services performed, and is a reasonable premium to induce the rescue from like peril, of property similarly circumstanced. I shall, accordingly, after deducting from the gross proceeds the costs of the libellants and of the officers of court, decree to the salvors one-half of the net proceeds of the vessel and cargo.

The next inquiry respects the distribution of the salvage-money amongst the salvors. The vessel is entitled to share in the distribution on account of her services in the adventure; but the ratio in which the vessel shall take, as amongst the salvors, seems no more determinate than the one by which the salvage itself is to be measured. The vessel was the essential instrument in effecting the salvage, and shares as salvor because put to risk in the adventure; and, as an inducement to owners to permit their masters to use their ships in the relief of vessels or property wrecked, or in imminent peril, it is meet that owners should participate in the benefit in some ratio to the hazard and value of their property so exposed. Where the risk of the vessel is extreme, and the salving vessel and cargo are of large value, the owner's share should be proportionably enlarged. In the case of The Blaireau, 2 Cranch [6 U. S.] 240, the court allowed the owners of the vessel and cargo one-third of the amount of salvage decreed. The exposure of the vessel in that case was greatly beyond that incurred by the Union; and, accordingly, that case aids the decision of it is only by indicating that the measure of reward to the salving vessel should be generous. Where a master, in charge of a valuable vessel and cargo, abandoned his voyage to bring in a wreck found derelict, and the owner protested against his conduct, and immediately displaced him from his command, I considered the merit of the salvage service to belong to the vessel, and held that the master and his crew ought to receive no more than a quantum meruit for their services as laborers. The Waterloo [Case No. 17,257]. But there is no exception, in this

case, to the conduct of the master and crew. The owner of the Union appears in court as a witness in support of their claim, and it must, therefore, be assumed that he ratifies and approves their conduct.

It does not appear whether or not the Union and her cargo were insured. But, if they were, and if the policy was forfeited, the deviation was merely technical. There was no wilful misconduct in the crew. The Union did not leave her voyage; but, finding this wreck off the coast, in the direct track of her homeward route, towed it into her port of destination. The Union and her cargo were valued by her owner at about $30,000. The wreck and her cargo brought, at auction, about $4,000. Had the vessels been of about equal value, the allowance to the salving vessel would be proportionably less. Under all the circumstances, I shall direct one-fourth of the amount of the salvage to be paid to the owner of the Union, and the remaining three-fourths to be divided into thirteen equal shares, to be distributed as follows—four shares to the master, two shares to the mate, and one share to each seaman, including the cook.

Decree accordingly.